IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JAMES PETER CONLAN,<br><br> Plaintiff<br><br>V.<br><br>**MID-ATLANTIC REGION COMMISSION ON HIGHER EDUCATION (MSCHE)** DOING BUSINESS AS **Middle States Association of Colleges and Schools** and the **MIDDLE STATES COMMISSION ON HIGHER EDUCATION**, et al.,<br><br>   Defendants | CIVIL ACTION NO.<br><br>3:15-CV-02841 (CCC)<br><br><br>R.I.C.O.<br><br>Civil Rights<br><br>False Warranty |

**PLAINTIFF'S MOTION TO AMEND THE COMPLAINT NUNC PRO TUNC**

May it please the honorable Court:

COMES NOW PLAINTIFF James Peter Conlan, Ph.D., Esquire, respectfully before this honorable District Court to move for leave to amend PLAINTIFF'S COMPLAINT with a SECOND AMENDED COMPLAINT, NUNC PRO TUNC:

I. **STATEMENT OF FACT**

1. On 16 November 2015, Plaintiff filed a COMPLAINT against the MID-ATLANTIC REGION COMMISSION ON HIGHER EDUCATION alleging, among other causes of actions, R.I.C.O. violations. (DE 1) The original named defendants were served on 10 March 2016.

2. On Monday, 18 April 2016, Plaintiff respectfully moved to amend the complaint (DE 14)

3. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (DE 14)

(a) showed that the AMENDED COMPLAINT met the standard to defeat dismissal on motion for summary judgment in the First Circuit for private plaintiff treble damage actions pursuant to 18 U.S.C. §1964(c), BUT

(b) made no gesture toward explaining whether the allegations ought relate back to the original pleading.

4. PLAINTIFF'S AMENDED COMPLAINT, successfully filed the next day, (DE 15) met the standard in the First Circuit to defeat summary judgment BUT was nonetheless defective in several ways:

(a) The clerk of the court kindly noticed Plaintiff on 20 April 2016 of a disjunction in the way that the University of Puerto Rico Board of Governors a.k.a. Junta de Gobierno UPR (UPR JG) was referenced in the summons and in the heading of the complaint. Though the fault might not be jurisdictional, inasmuch as the UPR Board of Governors was noted in page 11, section II, C, 1, *Krupski v. Crociere*, 130 S. Ct. 2485 (2010), at 22, it is longstanding rule of Common law that Writs are defeated by errors in naming even if the recipient has constructive notice of the Writ. *Fleta*, ed. & tr. H.H. Richardson, & G.O. Sayles (London, Selden Society 89, 1972), book 4, c. 10, p. 70, and F. R. Civ. Pro. Rule 1 encourages amendment now.

(b) No summons was included for the **Organización de Profesores Universitarios**, (**OPU**) inasmuch as Plaintiff's examination of the website of the local Secretary of State indicates that the corporation dissolved itself in Puerto Rico;

(c) The AMENDED COMPLAINT, though invoking this honorable district court's jurisdiction to grant equitable relief under 18 U.S.C. §1964(a),  was not filed with Temporary Restraining Orders or Preliminary Injunctions and,  consequently, was

defective in relation to Local Rule 65 which requires that "Any motion for a temporary restraining order or preliminary injunction shall be accompanied by a proposed order." Loc. R. Civ. Pro. R. 65.

(d) The AMENDED COMPLAINT did not provide the honorable court a proposed WRIT OF ASSIZE OF NOVEL DISSEISIN, WRIT OF NUISANCE, or WRIT OF ENTRY;

(e) The AMENDED COMPLAINT's allegations as to Plaintiff's standing and defendants' treble damage liability for the funds raised but not spent in line with the purposes of the LETTERPRESS TREASURES PROJECT lacked precision;

5.  PLAINTIFF'S SECOND AMENDED COMPLAINT cures these defects.

IN ADDITION,

6. It exhibits two posters by CAEL posted on the first floor of the Luis Palos Matos Building on 14 March 2016;

7. It references the fact that the governor chose not to pay the Commonwealth's debts on 2 May 2016;

8.  It corrects some dating and spelling errors.

9.  It better explains the Chancellor's unlawful transformation from bailee to tenant.

10.  It references the fact that an MSCHE team traveled in interstate commerce at the UPR's expense as recently as February 2016 to communicate that the education was "adequate" at the UPR-RP and that the UPR-RP complied with ALL criteria, even Standard 6 and Standard 3, and showed that the JCS Tenant Carlos Severino, Ph.D., Chancellor, published this communication online in March 2016;

11.  It establishes Plaintiff's standing to bring a treble damages action against defendants on behalf of the UPR as Next Friend BOTH under 18 U.S.C. §1964(c) AND by way of a WRIT OF WASTE, both TREBLE DAMAGES causes of action arising from the WASTE of that part of the library collection in the UPR Library System most

proximate to Plaintiff's freehold in that the waste causes the UPR to impair covenants of academic and research liberty promised to him.

12.   And, in the interests of justice, it incorporates MSCHE as defendant to both the three possessory writs and the writ of waste inasmuch as MSCHE is responsible for causing the students enfeoffed by the JCS tenants to be maintained with federal funds as they customarily deforce persons of their right to use the campus commons.

## II.  PLAINTIFF HAS MET HIS BURDEN FOR LEAVE TO AMEND THE COMPLAINT

1.  Leave to amend a complaint before trial is governed by Federal Rule of Procedure 15(a):

> "**Federal Rule of Procedure Rule 15(a)** governs leave to amend a pleading before trial.  One amendment as a matter of course is allowed within 21 days after serving it or in the case of where a responsive pleading is required.  All other amendments to pleadings must be permitted only with opposing party's written consent or the court's leave.  "**The court should freely give leave when justice so requires**."  F. R. Civ. Pro. R. 15(a)(2).  The First Circuit has stated that " . . . requests for leave to amend are normally evaluated under Rule 15(a)'s leave freely given standard. When made in derogation of a scheduling order, however, Rule 16(b)'s more stringent good cause standard takes precedence." *U.S. ex rel. D'Agostino v. EV3, Inc.,* 802 F.3d 188, 194 (1st Cir. 2015).

2. Judge Dominguez has recently clarified that even in such circumstances as when a date scheduled on docket had passed, leave to amend ought to be allowed when there is a showing of

> "lack of [10 | 11] undue prejudice to Defendant and the absence of bad faith on the part of Plaintiffs." *See O'Connell, 357 F.3d at 155* (" . . . Rule 15(a)'s 'freely given' standard . . . focuses mostly on the bad faith of the moving party and the prejudice to the opposing party.") *Ass'n of Victims of Med. Malpractice v. Torres-Nieves* (D.P.R., 2016), at 10-11.

3.  As a trial date has not been docketed: the "freely given standard" applies.

4.  Plaintiff's motive was not dilatory: On Friday, 22 April 2016, Plaintiff discovered online John Adams's personal copy of Anthony Fitz-Herbert, *The New Natura Brevium with Sir Matthew Hale's Commentary,* Eighth Edition (London, in the Savoy: For Henry Lintot,

1755). See https://ia802605.us.archive.org/13/items/newnaturabrevium00fitz/newnaturabrevium00fitz.pdf on which translation he based the Model Writs of Assize of Novel Disseisin, Assize of Nuisance, and Entry, filling in ellipses by way of reference to 12 Edward I, *Statute of Wales*, c. 6 (1284) 1 Statutes of the Realm 59-60.  "The forms of the Pleas to be pleaded in Wales," Copies in the Register, and Blackstone's *Commentaries*.

6.  The curing of the defect by amendment advances judicial economy: as president of the Senate in 1789, when the All Writs Act was passed, John Adams had the constitutional duty to maintain the Senate within its Constitutional jurisdiction. John Adams's copy of Fitzherbert's *New Natura Brevium* is thus perhaps the most jurisdictionally appropriate model available, and it advances judicial economy that the parties consider its merits prior to filing an answer rather than later in the case.

7.  Amending the Complaint a second time was not prejudicial: Served defendant MSCHE requested an enlargement of the term until 30 May 2016 to answer the amended complaint; MSCHE, the only served defendant, had constructive notice that the T.R.O.s, Preliminary Injunctions and Writs were forthcoming;

8.  The greater precision should advance the course of the trial.

9.  Denying Plaintiff leave to file these Orders and Writs does not relieve the defendants yet to be served – or Middle States, for that matter – from the potential treble damages liability likely to arise to Plaintiff and others from the foreseeable harm arising by reason of or naturally flowing from the predicate acts of Hobbs Act and State law extortion, subsequent to disseisin by collusion or force, that customarily arise upon perceived threats to the economic condition of the UPR.

**II. PLAINTIFF'S ALLEGATIONS APPERTAINING TO WRITS AND EQUITABLE RELIEF IN THE SECOND AMENDED COMPLAINT RELATE BACK TO THE ORIGINAL PLEADING**

1. The statute of limitations for the possessory Writs allowing multiple damage awards prayed for and included in this amended pleading is 30 (THIRTY) years. 3 Blackstone, *Commentaries* 189, c. 10; a term equal to the affirmative defense of prescription that may be raised in cases of possessory actions in Puerto Rico.  Puerto Rico Civil Code, Art. 1863 (1930), and therefore doubly authorized under the Rules of Decisions Act.

2.  Demandant's possession dates back to only July/August 1999.

3. The cause of action for Waste runs with the land.

4.  The equitable relief requested under R.I.C.O. is prospective in nature, in part based on the evidence of the open continuity of the pattern of racketeering conduct.

5. INASMUCH AS**, pursuant to Rule 15(c)(A), amendments relate back to the original pleading when**

> "(A) the law that provides **the applicable statute of limitations** allows relation back; F. R. Civ. Pro. R. 15(c)(A)

**6. THEREFORE** the possessory writs, writ of waste and equitable causes of action relate back to the original pleading, insofar as they can.

**III.   PLAINTIFF'S TREBLE DAMAGE CIVIL ENFORCEMENT R.I.C.O. ALLEGATIONS IN THE SECOND AMENDED COMPLAINT RELATE BACK TO THE ORIGINAL PLEADING**

7. Pursuant to Rule 15(A) an 18 U.S.C. §1964(c) case arising under 18 U.S.C. §1962(c) MUST ALLEGE   "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); see also *Arzuaga-Collazo v. Oriental Fed. Sav. Bank*, 913 F.2d 5, 5-6 (1st Cir.1990).  *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (C.A.1 (Mass.), 1996).

8. Allowing for both actual and constructive notice, as is the rule in this district, all "claims asserted [against MSCHE] in the amended pleading[s] arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Plaintiff's Motion to Amend the Amended Complaint *Nunc pro Tunc*, Exhibit 1. OR

9. Alternately, such acts arose out of predicate acts of racketeering committed **since the filing of the original complaint** grounded in the same pattern of "conduct…set forth or attempted to be set forth in the original pleading" R. 15(B) and thus are not time barred. Fed. Rules of Civil Procedure 15(c)(A).Plaintiff's Motion to Amend the Complaint nunc pro tunc, Exhibit 1.

10. The joinder of the defendants first joined in the Amended Complaint relates back to the original complaint in its identification of and suit against the conspiracy or local associated-in-fact racketeering enterprise that customarily deforces Plaintiff of access to the campus commons, in prejudice to his freehold, and by way of teachings that served defendant MSCHE has a duty to abate, has created and maintained a nuisance on the campus (Complaint, Allegation 161) toward serving its extortionate ends.

11. **OPU**, if it exists, had constructive notice from the amended complaint that it, as a JCS tenant, was being sued pursuant to possessory writs and as part of a local associated-in-fact enterprise.

12. **INASMUCH AS**

   "Rule 15(c)(B) permits the amendment of an original complaint to add new claims as long as "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed Civ. Pro. 15(c)(2).  This rule reflects the policy objective of ensuring that defendants have constructive notice of potential, related claims in a timely fashion.  *Drakatos v. R.B. Denison, Inc.,* 493 F. Supp. 942, 946 n. 6 (D. Conn. 1980)" *Pagan Velez v. Laboy Alvarado*, 145 F. Supp. 2d 146, 159 (P.R. 2001).

13. **THEREFORE** the causes of action brought under R.I.C.O. in the Second Amended Complaint relate back to the original complaint under Rule 15(c)(B).

14. **ALTERNATELY, It bears noting that Congress HAS NOT enacted a Statute of Limitations for private plaintiff civil R.I.C.O. claims**:  Rather, the Supreme Court reasoning by analogy to the Clayton Act has established by rule unsupported by statute that Civil R.I.C.O enforcement actions for treble damages cannot be brought after four years from accrual of the injury. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143, (U.S. 1987).

15. The Supreme Court's holding in *Agency Holding Corp.*, *supra*, supposed that the Clayton Act statute of limitations of four years is the most applicable federal law: such a holding is particularly vulnerable to challenge in this case inasmuch as (a) the Rules of Decision Act, 28 U.S.C. §1652, requires application of state statutes of limitation "unless a **timeliness rule drawn from elsewhere in federal law should be applied**" *Agency Holding Corp.*, *supra*, at 147, citing to *DelCostello v. Teamsters*, 462 U.S. 151, 159, n. 13 and 462 U.S. 174, n. 1 (O'Connor, dissenting); (b) the holding in *Agency Holding Corp., supra.* relies on the reasoning that

> "when a rule **from elsewhere in federal law clearly provides a closer analogy** than available state statutes, and when federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." *DelCostello v. Teamsters,* 462 U.S. 171-2,

AND (c) the High Court relies on the **demonstrably erroneous finding of fact** that "[c]oncepts such as RICO 'enterprise' and 'pattern of racketeering activity' were simply unknown to common law." *Agency Holding Corp.*, *supra*, 483 U.S. at 150, this latter finding of fact to citing to *A. J. Cunningham Packing Corp. v. Congress Financial Corp.,* 792 F.2d 330, 348 (CA3 1986)

16. The Third Circuit.concurrence failed to closely examine exactly the possessory writs that the demandant prays for in this case, where, on a finding of (a) collusive deforcement (structured enterprise), pursuant to 1 Richard II, c. 9, 4 Henry IV, c. 7,  and 11 Henry VI, c. 3; (b) disseisin or unlawful entry *vi et armis* (a modality of Hobbs Act and

state law extortion in this case) pursuant to 4 Henry IV, c. 8, 8 Henry VI, c. 9; (c) disseisin of common of pasture, (interfering with wool production, generally exported as raw material or cloth, customs payable to the Crown, an interstate and foreign commerce analogy) pursuant to 3&4 Ed. VI c. 3, §2 reciting Statute of Merton, 20 H. III, c. 4, and Statute of Westminster 2, 13 E. I, St. I, c. 46) and (d) redisseisin by one of multiple disseisors (a pattern of predicate acts, the pattern requiring ONLY TWO disseisin's by the associated-in-fact enterprise), pursuant to Stat. of Westminster 2, 13 Ed. I, c.26, demandant suing for the Writ of Novel Disseisin is entitled to an AWARD OF MULTIPLE DAMAGES from the assize or the jury pursuant to the Writs prayed for in this case, a remedy that, under the All Writs Act, a federal court has ample jurisdiction to award.

17. In addition to being erroneous in fact, the Third Circuit opinion on which the Supreme Court relies in *Agency Holding Corp.*, *supra*, is deeply unimaginative in its application of the Mischief Rule:  the various versions of the Arthurian tale "Gareth and Lynette" turn on what the above mentioned statutes authorizing an assize allow us to imagine was a typical medieval mischief whereby the collection of a toll or enforcement of extortionate demand followed hard upon disseisin and unlawful entry *vi et armis* into the ingress and egress communicating between a freehold and common passage or the erection of a nuisance or the maintenance of said freehold *vi et armis*.

18.  Sir Thomas Malory relates that, on his way to relieving Lyones of disseisin, wrongful entry and dissessin maintained *vi et armis* "that she may nat oute of hir castle,"[i] by an associated-in-fact enterprise made up of Sir Ironsyde, a.k.a. the Red Knight of the Red Lands and "the erlys and barons with him" Book 7, c. 18, p. 200, and his 300 knights, c. 36, p. 225, Gareth must combat with other knights who have disseised the passage there: these include (a) two brother knights, Sir Gararde le Breuse and Sir Arnold le Bruce, who, working as co-diseeisors, have wrongfully entered into the ford allowing

passage through the forest, Book 7, c. 6, p. 81; Book 7, c. 14, p. 194; and (b) four brother knights working in concert as leaders of an associated-in-fact enterprise preventing passage to this castle: of these, Sir Perard, the Black Knight of the Black Lands, is a robber and kidnapper who attempts to enforce Gareth to surrender Lyonet at the Black Thorn, Book 7, c. 7, 184; Sir Perthenow, the Green Knight. commands thirty knights to prevent use of the forest road; Book 7, c. 9, p. 187; Sir Perymones, the Red Knight, commands a Tower overlooking the Pace Perlelus, and sixty knights to prevent passage; Sir Persaunte, the Blue Knight, employs what one would expect to be the commons of a meadow as an exercise yard and tilting ground in good weather, commands 100 knights. Book 7, c. 11, p. 190; c. 36, p. 225.

19. Epitomizing Malory, Alfred Lord Tennyson has his own Lynette declare to King Arthur,

> O King, for thou hast driven the foe without,
> See to the foe within! Bridge, ford, beset
> By bandits, everyone that owns a tower
> The Lord for half a league… [ii]

prior to having Lynette describe an associated-in-fact enterprise of four brothers, three of whom who have deforced her sister Lyonor of egress from a castle that commands view of a river, on behalf of the mightiest brother, the fourth who commands them, "to break her will, and make her wed with him."[iii]

20. Upon a showing that the pattern of conduct adopted by these persons who disseised Lyonor caused her inconvenience in trading goods in interstate and foreign commerce, (A) 18 U.S.C. §1964(a), awards the District Court jurisdiction to award each Lyonor equitable relief to divest Malory's Sir Ironsyde and Tennyson's four brothers of their interest and control in Lyonor's estate, acquired in violation of 18 U.S.C. §1962(b), and (B) 18 U.S.C. §1964(c) awards the District Court jurisdiction to award treble damages to each Lyonor for the injuries sustained owing to the multiple predicate acts that she has

suffered, AND EQUALLY (C) the All Writs Act provides this honorable district court, enforcing Lyonor's civil rights, with jurisdiction to issue the Writ of Assize of Novel Disseisin to restore Lyonor to possession and (D) to award multiple damages against her disseisors acting in combination, it would seem that prior to enacting R.I.C.O., Congress had already provided this honorable district Court a means to address the same mischief whose statute of limitations was thirty years.

21. A proper reading of the Rules of Decision Act, 28 U.S.C. §1652, through *Agency Holding Inc.*, *supra*, uncolored by the Third Circuit concurrence's finding, in the light of Federal Rule of Civil Procedure Rule 1, would hold that in cases analogous to the situation where **disseisin precedes and is the modality whereby an associated-in-fact enterprise engages in Hobbs Act or State law extortion**, that relief under 18 U.S.C. §1964(a) and (c) R.I.C.O. **ought regularly be available to a private plaintiff** for THIRTY YEARS subsequent to disseisin.

22.  **THEREFORE**, the R.I.C.O. causes of action, where disseisin and deforcement are the modality of and precede extortion, relate back to the Original Pleading under **Rule 15(c)(A).**


**WHEREFORE**, having met his burden under Federal Civil Rule of Procedure, Rule 15(a)(2) and 15(c), Plaintiff respectfully requests leave of this honorable district court to file Plaintiff's Second Amended Complaint *nunc pro tunc*.


**I HEREBY CERTIFY** that on this day, 11 May 2016, in San Juan, Puerto Rico, that I have filed this motion with CM/ECF Live which will serve it on attorney for the Defendants, CARLOS A. RODRIGUEZ VIDAL, GOLDMAN ANTONETTI & CORDOVA, LLC, P.O. Box 70364, San Juan, P.R. 00936-0364, and *pro hac vice* applicants Roberto Rivera-Soto and Paul Lantieri III.

**VERY RESPECTFULLY SUBMITTED**, this day in San Juan, Puerto Rico

/s/ JAMES P. CONLAN, PH.D., ESQUIRE

USDPR # 232007

James P. Conlan, Ph.D., Esquire

Condominio San Mateo Plaza, Apartment PH-3

1626 San Mateo Street

San Juan, Puerto Rico 00912

James.conlan@gmail.com

787-996-9301

---

[i] Thomas Malory, "The Tale of Sir Gareth of Orkney that was called Bewmaynes" 176-225 in Malory, *Works*, 2nd Edition, ed. Eugene Vinaver (Oxford et al: Oxford University Press, 1971; Paperback edition, 1978), Book 7, c. 2, p. 179.

[ii] Alfred Lord Tennyson, "Gareth and Lynette" *Idylls of the King* 675-975 in *Tennyson: A Selected Edition*, ed. Christopher Ricks, (Berkeley & Los Angeles: University of California Press, 1989), ll. 579-586;

[iii] "Lynette, my name; noble; my need, a knight
To combat for my sister, Lyonors,
A lady of high lineage, of great lands,
And comely, yea, and comelier than myself.
She lives in Castle Perilous: a river
Runs in three loops about her living-place;
And O'er it are three passings, brethren, and a fourth
And of that four the mightiest, holds her stayed
In her own castle, and so besieges her
To break her will, and make her wed with him." Alfred Lord Tennyson, "Gareth and Lynette" *Idylls of the King* 675-975 in *Tennyson: A Selected Edition*, ed. Christopher Ricks, (Berkeley & Los Angeles: University of California Press, 1989), ll. 579-586; 592-602.