IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JAMES PETER CONLAN,<br><br>Plaintiff,<br><br>v.<br><br>THE MID-ATLANTIC REGION COMMISSION ON HIGHER EDUCATION, D/B/A THE MIDDLE STATES ASSOCIATION OF COLLEGES AND SCHOOLS, et al.,<br><br>Defendants. | CASE NO. 3:15-cv-02841 (CCC) |

**OPPOSITION OF DEFENDANTS THE MID-ATLANTIC REGION COMMISSION ON HIGHER EDUCATION, d/b/a THE MIDDLE STATES ASSOCIATION OF COLLEGES AND SCHOOLS, AND THE MIDDLE STATES COMMISSION ON HIGHER EDUCATION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT NUNC PRO TUNC**

TO THE HONORABLE COURT:

NOW COME defendants The Mid-Atlantic Region Commission on Higher Education, d/b/a The Middle States Association of Colleges and Schools, and The Middle States Commission on Higher Education (collectively, the "MSCHE Defendants"), by and through their undersigned counsel, and respectfully set forth and pray that plaintiff's "Motion To Amend the [already amended] Complaint Nunc Pro Tunc" (Doc. No. 23) be denied for two sraightforward reasons: the proposed amendment is futile and serves no useful purpose.

1

**PRELIMINARY STATEMENT**

1.      Plaintiff -- an attorney representing himself in this action and a professor of English at the University of Puerto Rico, Rio Piedras Campus ("UPR") -- has filed a series of increasingly lengthy, convoluted, and unintelligible complaints concerning wrongs he allegedly has suffered at UPR. The now-operative complaint (the "amended complaint") (Doc. No. 15) is the second in that series: it names 28 separate defendants; contains 161 pages (exclusive of exhibits) and countless indecipherable, non-sequentially numbered allegations; and seeks all manner of relief under dozens of federal laws and early English writs and statutes, among other supposed grounds. Contemporaneously with this response, the MSCHE Defendants are filing a motion to dismiss the amended complaint on the ground that it manifestly fails to comply with the clear mandates of *Rules* 8(a)(2) and 8(d) of the *Federal Rules of Civil Procedur:* that a pleading contain a "short and plain statement of the claim" and that each allegation therein be "simple, concise, and direct."

2.      Before any defendant responded to his initial complaint or his amended complaint, plaintiff filed a second amended complaint (Doc. No. 22) that is even more dense and unintelligible than the amended complaint. After realizing that he could not further amend his amended complaint as of right, plaintiff filed his "motion to amend nunc pro tunc" (Doc. No. 23). Because the proposed amendment is futile and serves no useful purpose, the Court should deny plaintiff's motion and require that, should he choose to proceed with this action, plaintiff adhere to the requirements of *Rule* 8.

**BACKGROUND AND PROCEDURAL HISTORY**

3.      The Mid-Atlantic Region Commission on Higher Education, d/b/a the Middle States Commission on Higher Education ("MSCHE") is a voluntary, non-governmental,

- 2 -

membership association incorporated under Pennsylvania law and recognized by the U.S. Secretary of Education to conduct accreditation and pre-accreditation activities for institutions of higher education in Delaware, the District of Columbia, Maryland, New Jersey, New York, Pennsylvania, Puerto Rico and the U.S. Virgin Islands.[1]  (*See* Am. Compl. at 14; *see also* MIDDLE STATES COMMISSION ON HIGHER EDUCATION, https://www.msche.org/ (last visited May 13, 2016)).

  4. Plaintiff is a professor of English at UPR, where he has worked since 1999.  (*See* Am. Compl. at 10).  UPR is accredited by MSCHE.  (*See* Am. Compl. at 13).

  5. Plaintiff's initial complaint in this action, filed in November 2015 but not served on the MSCHE Defendants until March 2016, targeted only the MSCHE Defendants and two unidentified John Doe defendants.  (*See* Doc. No. 1 ¶¶ 1-3.)  According to the initial complaint, MSCHE's accreditation of UPR somehow was wrongful and gave rise to liability for manufactured claims of "breach of duty under federal law," "false warrant of sufficient Institutional Resources," and "aiding-and-abetting of and giving material support to [an] enterprise" engaged in restraint of trade under the Sherman Act, the Clayton Act, and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (*See ibid.*)  Among many other things, plaintiff alleged that UPR for many years had tolerated or encouraged occasional student assemblies orchestrated for the purpose of shutting down the UPR campus so as to compel the Commonwealth of Puerto Rico to give the university money, or to compel the university to cede unidentified property rights to its students.  (*See* Doc. No. 1 ¶ 34.)

---

[1] MSCHE formerly was a unit of the Middle States Association of Colleges and Schools ("MSA"), which plaintiff also has named as a defendant but incorrectly identified as the business name of MSCHE.  MSCHE and MSA are collectively referred to as the "MSCHE Defendants" herein.

6. Plaintiff has now filed three complaints in this matter, each of which is more verbose and convoluted than the last. In his first complaint, filed in November 2015, plaintiff generally claimed that, for at least the last ten years, UPR has tolerated occasional assemblies that have been orchestrated by UPR students for the purpose of shutting down the campus to compel the Commonwealth of Puerto Rico to give money to the university or to compel the university to ceded certain unidentified property rights to its students. (*See* Doc. No. 1 ¶ 34). Relying on this narrative, plaintiff alleged that MSCHE wrongfully accredited UPR and therefore was somehow liable to him personally. (*See id.* at ¶¶ 1-3 (alleging that MSCHE's accreditation of UPR gave rise to liability for "breach of duty under federal law," "false warrant of sufficient Institutional Resources," and "aiding-and-abetting of and giving material support to [an] enterprise" engaged in restraint of trade under the Sherman Act, the Clayton Act, and the Racketeering Influenced and Corrupt Organizations Act ("RICO"))).

7. After the MSCHE Defendants were served, they sent plaintiff a "safe harbor" letter requesting that he withdraw the complaint as violative of *Rule* 11 of the *Federal Rules of Civil Procedure*. In the letter, the MSCHE Defendants advised plaintiff that MSCHE has no duty to him under federal law, much less one that MSCHE has breached. (Doc. No. 14 Ex. 1 at 2.) They further advised plaintiff that courts consistently have held that accrediting entities such as MSCHE owe a duty of care to the institution being accredited, not to any third-parties. (*Ibid.*) In addition, the MSCHE Defendants put plaintiff on notice that there is no cause of action for "false warrant of sufficient Institutional Resources"; that the claim that MSCHE aided and abetted violations of the Sherman, Clayton and RICO Acts lacks any basis whatsoever; that the Sherman and Clayton Acts address interdicting anticompetitive behavior -- that is, monopolistic practices, none of which is present here -- and that RICO interdicts a "pattern of

racketeering activity," which requires defining a "corrupt enterprise" and the presence of statutorily defined predicate acts, all of which also is absent from plaintiff's complaint. (*Ibid.*) And, the MSCHE Defendants advised plaintiff that each of his claims requires that he be harmed as a direct and proximate result of a defendant's actions, whereas -- ironically -- he has continued his employment because UPR was accredited by MSCHE. (*Ibid.*) In other words, plaintiff has benefitted by the actions he now seeks to condemn. (*Ibid.*)

8. Rather than withdraw his complaint, plaintiff: (i) attached the "safe harbor" letter as an exhibit to his motion to amend the initial complaint (Doc. No. 14 Ex. 1); and (ii) made the "safe harbor" letter the basis of his oppositions to the MSCHE Defendants' pending pro hac vice motions (Doc. Nos. 17 & 18; see also Doc. No. 19 (plaintiff's filing purporting to amend his opposition at Doc. No. 18)).

9. Plaintiff filed his amended complaint (Doc. No. 15) as of right on April 19, 2016 (a day after he inexplicably filed a motion to amend his initial complaint (Doc. No. 14)). The amended complaint named more than twenty new defendants -- including the University of Puerto Rico, its Board of Governors, its student council, several unions (including plaintiff's own association), and several individuals, including the Governor of Puerto Rico -- and otherwise greatly expanded the complaint with a myriad of new allegations across 161 pages, rambling and incomprehensible references to obscure statutes and treatises, and a host of new and different claims, including numerous obscure and obsolete writs, alleged civil rights violations, and state law claims, along with several purported RICO claims. (*See generally* Doc. No. 15.)

10. On May 2, 2016, with none of the other defendants having yet been served, the MSCHE Defendants filed a motion for extension of time until May 31 to file their

response to the amended complaint. (Doc. No. 21.) In their contemporaneous motion to dismiss, the MSCHE Defendants respectfully submit that the Court should dismiss the amended complaint and require that, should he choose to proceed with this action, plaintiff adhere to the requirements of *Rule* 8. Doing so would relieve the Court and all of the defendants from the impossible task of deciphering, much less responding to and ruling upon, the mishmash of allegations and claims in the amended complaint, and allow the Court to streamline the presentation and consideration of defenses from the various groups of defendants. The MSCHE Defendants expressly reserve their right to assert all other defenses to plaintiff's complaint, including under *Rule* 12(b)(6), at the appropriate time.

11. In the meantime, on May 10, 2016 -- without first obtaining leave to do so -- plaintiff filed a second amended complaint. (Doc. No. 22.) The next day, he filed a "motion to amend the [already amended] complaint nunc pro tunc." (Doc. No. 23.) Although plaintiff contends that his proposed further amendments add "precision" to his pleading (Doc. No. 23 at 3), they have the opposite effect: they make it even more dense and unintelligible. Among other things, they add 23 pages of allegations (bringing the total length of the proposed complaint to 184 pages, with 99 endnotes) and an additional 200 pages of exhibits. (*See generally* Doc. No. 22.) Plaintiff's motion to amend offers a microcosm of the problems with plaintiff's unrestrained pleading: it relies upon, among other things, a 16th Century treatise on English law "as perhaps the most jurisdictionally appropriate model available" (Doc. No. 23 at 5); the 13th Century Statutes of the Realm as a source of the obscure and obsolete writs he seeks to assert (*id.*); and -- across three pages of his motion -- tales of the Knights of the Roundtable, apparently in support of an argument that his purported RICO allegations in his proposed second amended complaint relate back to his initial complaint. (*see id.* at 9-11).

12. This opposition followed.

## ARGUMENT

13. *Rule 15* of the *Federal Rules of Civil Procedure* governs amended and supplemental pleadings. Once a party has filed an amended pleading -- as plaintiff has here -- any subsequent amendments are permitted only with the opposing party's consent or with leave of court. *See Fed. R. Civ. P.* 15(a)(2). And when, as here, a proposed amendment "would be an exercise in futility, or otherwise would serve no useful purpose, the district court need not allow it.'" *Municipality of San Sebastian v. Puerto Rico*, 116 F. Supp. 3d 49, 57 (D.P.R. 2015) (denying request for leave to amend because proffered amendment served no useful purpose) (quoting *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006)).

14. Plaintiff's proposed second amended complaint would be an exercise in futility and serves no useful purpose: just like the amended complaint it proposes to supplant, it manifestly fails to satisfy the fundamental pleading requirements of *Rule* 8. As set forth in the MSCHE Defendants' motion to dismiss the amended complaint,[2] the *Federal Rules of Civil Procedure* were designed to interdict precisely the type of pleading now before the Court. *Rule* 8(a)(2) requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and *Rule* 8(d)(1) provides that each allegation in the complaint "must be simple, concise, and direct." *Fed. R. Civ. P.* 8(a)(2) & 8(d). *See, e.g.*, *Miranda v. United States*, 105 F. App'x 280, 281 (1st Cir. 2004) ("'Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'") (quoting 5 Charles

---

[2] For brevity's sake, the arguments advanced in the MSCHE Defendants' motion to dismiss the amended complaint are incorporated by reference as if each such argument was fully set forth here.

Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1281, at 522 (2d ed. 1990)); *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1171 (1st Cir. 1995) (emphasizing that fundamental purpose of pleadings is to protect "the defendant's inalienable right to know in advance the nature of the cause of action being asserted against him").  Dismissal is appropriate when, again as here, a complaint fails to meet these basic requirements.  *E.g.*, *Sayied v. White*, No. 03-2253, 2004 WL 489060, *1 (1st Cir. Mar. 12, 2004) (unpublished) (affirming dismissal because complaint was "so prolix, redundant and unintelligible that it would have been unreasonable to expect defendants to frame a response to it"); *Kuehl v. F.D.I.C.*, 8 F.3d 905, 908 (1st Cir. 1993) ("A district court has the power to dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s 'short and plain statement' requirement."); *Belanger v. BNY Mellon Asset Mgmt., LLC*, 307 F.R.D. 55, 58 (D. Mass. 2015) (dismissing complaint that was "replete with rambling, incoherent allegations, inappropriate legal argument, and swaths of irrelevant background material and exhibits"); *Peabody v. Griggs*, No. CIV.A. 08-243-ML, 2009 WL 3200686, at *4 (D.R.I. Oct. 6, 2009) (dismissing second amended complaint that was "a rambling fact-laden, disjointed 'quagmire of minutiae' that was "replete with irrelevant, repetitive, and incomprehensible factual averments").

    15. Like the amended complaint, the proposed second amended complaint is excessively verbose, presented in an impossible-to-follow rambling and recursive style, and filled with excerpts from irrelevant "Learned Commentary."  (*See generally* Doc. No. 22.) The proposed amendments -- which add factual allegations ironically in the name of "precision" -- only make it even more unwieldy and out of line with the requirements of *Rule* 8.  *See, e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Plaintiffs need not lard their complaints with facts[.]"); *Belanger*, 307 F.R.D. at 57 ("A pleading is not an appropriate vehicle for

aggregating masses of evidence or advancing premature legal arguments."). Neither the Court nor defendants should have to slog through such a pleading. *See Newman v. Com. of Mass.*, 115 F.R.D. 341, 344 (D. Mass. 1987) ("'[P]ragmatic matters', such as the time and expense for these defendants and this Court to decipher this overly detailed complaint and the even more detailed answer it would necessitate . . . indicate that this Amended Complaint should be dismissed." (quoting *City of Gainesville v. Florida Power & Light Co.*, 488 F. Supp. 1258, 1263 (S.D. Fla. 1980))).

## CONCLUSION

16.     The proposed second amended complaint fails to satisfy the fundamental pleading requirements of *Rule* 8, and therefore it is futile and serves no useful purpose. If plaintiff wishes to proceed with this action, he should be required to file what the *Rules*, due process and basic common sense remand: a concise and direct complaint setting forth in short and plain terms the facts and legal theories that he asserts as grounds for relief from each defendant. And, if plaintiff truly wishes to pursue RICO claims, he should be required to comply with this Court's RICO Case Standing Order.[3]

17.     For the foregoing authority, arguments and reasons, the MSCHE Defendants respectfully pray that the Court deny plaintiff's motion for leave to file his proposed second amended complaint, and grant such other and further relief as the Court deems just and proper.

---

[3] *See* http://www.prd.uscourts.gov/sites/default/files/documents/88/RICO.pdf (requiring that specified information be submitted "in detail and with specificity").

I CERTIFY: That on this same date this document was filed with the Court's CM/ECF System, which will send copies to James Peter Conlan, San Mateo Plaza Apt. PH-3, 1626 San Mateo St., San Juan, P.R. 00912.

**DATED**: May 31, 2016

s/ CARLOS A. RODRIGUEZ VIDAL
USDC #201213
GOLDMAN ANTONETTI & CÓRDOVA, LLC
American International Plaza – 14th Floor
250 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Tel. 787-759.4117
Fax: 787-767.9177
crodriguez-vidal@gaclaw.com

Roberto A. Rivera-Soto
*Pro Hac Vice Admission Pending*
BALLARD SPAHR LLP
210 Lake Drive East – Suite 200
Cherry Hill, NJ 08002-1163
Tel. 856-761.3400
Fax: 856-761.1020
riverasotor@ballardspahr.com

Paul Lantieri III
*Pro Hac Vice Admission Pending*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel. 215-665.8500
Fax: 215-864.8999
lantierip@ballardspahr.com

*Attorneys for Defendants The Mid-Atlantic Region Commission on Higher Education, d/b/a The Middle States Association of Colleges and Schools, and The Middle States Commission on Higher Education*